*15*

FILED

MAR 2 3 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

# FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 09-18840-B-13 |
| Daniel Lavilla and | ) | DC No. TOG-1 |
| Molly Lavilla, | ) | |
| Debtors. | ) | |

## MEMORANDUM DECISION REGARDING MOTION TO CONFIRM CHAPTER 13 PLAN

Michael H. Meyer, Esq., appeared in his capacity as the chapter 13 trustee.

Thomas O. Gillis, Esq., appeared on behalf of the debtors, Daniel and Molly Lavilla.

Before the court is a motion by the debtors, Daniel and Molly Lavilla (the "Debtors") to confirm an amended chapter 13 plan (the "Plan") over the objection of the chapter 13 trustee, Michael H. Meyer, Esq. (the "Trustee"). The Trustee contends that neither the Plan, nor the petition, satisfies the "good faith" requirement of 11 U.S.C. subsections 1325(a)(3) & (7) (the "Objection"). This case was originally filed as a chapter 7, however, the Debtors had already received a chapter 7 discharge in 2005. After realizing that they were not eligible for another chapter 7 discharge, the Debtors converted this case to chapter 13. The Plan appears to satisfy the elements for confirmation in all respects except the Trustee's challenge to the Debtors' good faith. The Trustee contends, in essence, that chapter 13 debtors who are not eligible for a chapter 7 discharge must make an affirmative

*52*

1    showing of "good faith." He also suggests that such debtors should be held, *per se*,

2    to a higher "good faith" standard. The Debtors have offered no evidence in support

3    of confirmation, or in response to the Trustee's Objection. Because the Debtors

4    have failed to sustain their burden of proof on the issue of good faith, the Trustee's

5    Objection will be sustained.

6        This memorandum decision contains the court's findings of fact and

7    conclusions of law required by Federal Rule of Civil Procedure 52(a), made

8    applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052.

9    The court has jurisdiction over this matter under 28 U.S.C. § 1334, 11 U.S.C.

10   § 1325[1] and General Orders 182 and 330 of the U.S. District Court for the Eastern

11   District of California. This is a core proceeding as defined in 28 U.S.C.

12   §§ 157(b)(2)(A) & (L).

13   **Background and Findings of Fact.**

14       The following facts were compiled from the court's review of the records in

15   this case and the Debtors' prior chapter 7 case. In February 2005, the Debtors filed

16   a petition for relief under chapter 7 in the Northern District of California (case

17   number 05-10251) (the "Prior Case"). In May 2005, they received a discharge in

18   the Prior Case. In September 2009, four years and seven months after filing the

19   Prior Case, they again needed relief from their creditors and filed this petition under

20   chapter 7. Because of the Prior Case, the Debtors will not be eligible for another

21   discharge in chapter 7 until February 2013. However, they are eligible to receive a

22   discharge in chapter 13 if they are able to confirm and complete their Plan.[2] When

23   _____

24       [1]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy

25   Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules
     1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The

26   Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20,
     2005, 119 Stat. 23.

27

28       [2]11 U.S.C. § 727(a)(8) provides that a debtor cannot receive a discharge in chapter 7 if
     the debtor has already received a chapter 7 discharge in a case filed within the prior eight
     years. 11 U.S.C. § 1328(f)(1) provides that a debtor cannot receive a discharge in chapter 13

Debtors' counsel realized that the Debtors were not eligible for a chapter 7 discharge, he filed a motion to convert this case to chapter 13. That motion was granted without a hearing.

The Debtors are below-median-income debtors within the meaning of subsection 1325(b)(3) so their "disposable income" is determined from schedules I and J. It appears from the schedules that the Debtors are the working parents of two elementary-school-age children. Their only source of income is from their employment. Mr. Lavilla earns $3,600 per month as a security officer and Mrs. Lavilla earns $1,370 per month as an assistant librarian for the local school district. Together, their net take-home pay is reported on schedule I to be $3,420 per month. Their household expenses, including an automobile payment of $392, are reported on schedule J to be $3,452 leaving a *negative* monthly net income of $32.

The Debtors' schedules show that they own no real property and rent their residence. The Debtors' personal property, including their automobile, is stated to be worth $16,500 and all of their assets are either encumbered or exempt. Their scheduled unsecured debts total $18,524, which includes debts for medical services, credit cards, "payday" loans and various claims assigned to collection agencies. The Debtors have no priority debts. Five unsecured claims have been filed to date totaling $11,068. The only secured debt scheduled in the amount of $16,732 is for their automobile, a 2005 Ford Escape, which they value at $10,000. There is nothing in the schedules to suggest that the Debtors have experienced an unusual hardship, medical emergency or catastrophic loss.

The proposed Plan provides that the Debtors will make monthly payments to the Trustee in the amount of $417 for a term of 60 months. The Plan payments will be applied to pay the Trustee's compensation, the secured automobile claim and the

---

if the debtor has received a discharge in a case filed under chapter 7 within the prior four years. This case was filed more than four years after the prior chapter 7. Prior to BAPCPA, there was no restriction on a debtor's ability to file a chapter 13 petition and get a discharge after a prior case.

3

1    Debtors' attorney's fees in the amount of $2,100.[3]  The automobile claim will be

2    paid in full at the rate of $324.30 per month with 5.0% interest.[4]  The Plan provides

3    for a 0% distribution to the unsecured creditors in class 7.  However, at the hearing,

4    the Debtors' counsel stated that the class 7 distribution was calculated incorrectly.

5    The unsecured creditors will receive a 4.8% distribution after his attorney's fees are

6    paid and he offered to correct the error in the confirmation order.  That adjustment

7    did not satisfy the Trustee's Objection.

8    **Issues Presented.**

9         The Debtors cannot receive a chapter 7 discharge and are now proposing to

10   make an insignificant distribution to their unsecured creditors in exchange for a

11   chapter 13 discharge.  Based on that combination of circumstances alone, the

12   Trustee argues that both the bankruptcy petition and the chapter 13 plan fail to

13   satisfy the "good faith" test. The Trustee contends that this chapter 13 case is just a

14   disguised chapter 7 which constitutes a *per se* abuse of the Bankruptcy Code.  The

15   two questions presented to the court are: (1) Is it *per se* bad faith for a debtor, who

16   has received a chapter 7 discharge within the last eight years and is not eligible for

17   another chapter 7 discharge, to seek relief under chapter 13 unless he or she can

18   make a significant distribution to the unsecured creditors, and, if not; (2) What

19   showing is required from that debtor to satisfy the "good faith" requirements of

20   subsections 1325(a)(3) and (7)?

21   **Analysis and Conclusions of Law.**

22        **The "Good Faith" Test.**  Pursuant to subsection 1325(a)(3), the Debtors

23

24   _____

25   [3]Based on the Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys
     statement filed after conversion of this case to chapter 13, the Debtors have paid their attorney

26   $1,400.  The no-look fee for individual chapter 13 cases in the Eastern District of California is
     $3,500.  The balance of $2,100 must be paid to Debtors' attorney through the Plan.

27

28   [4]The debt is listed in schedule D in the amount of $16,060.  The creditor filed a proof of
     claim in the amount of $16,732.49.  The automobile was purchased within 910 days of the
     bankruptcy petition and so cannot be valued under § 506.

                                          4

cannot confirm a chapter 13 plan which is not filed in good faith. In addition, the Debtors cannot confirm a plan unless their bankruptcy petition is filed in good faith. § 1325(a)(7). The Debtors have the burden of proof on each element of confirmation by a preponderance of the evidence. *U.S. v. Arnold and Baker Farms (In re Arnold and Baker Farms)*, 177 B.R. 648, 654 (9th Cir. BAP 1994) (judg't aff'd 85 F3d 1415 (9th C.A. 1996), *cert. denied* 519 U.S. 1054 (1997).) "Good faith" is essentially an element of a debtor's qualification to be in chapter 13 in the first place. *See Marrama v. Citizens Bank of Massachusetts (In re Marrama)*, 549 U.S. 365, 373 (2007). However, pursuant to Rule 3015(f), unless an objection is timely filed, the court can find that the chapter 13 plan has been filed in good faith without taking evidence on the issue.

The Bankruptcy Code does not define "good faith." The court must consider the totality of the circumstances when making the "good faith" determination. *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1391 (9th Cir. 1982) (a chapter 13 plan which only pays 1% to unsecured creditors is confirmable if otherwise filed in good faith). The court can determine that a chapter 13 petition is not filed in "good faith" without having to find that the debtor is acting in "bad faith" (dishonesty of belief or purpose). *Guastella v. Hampton (In re Guastella)*, 341 B.R. 908, 920 (9th Cir. BAP 2006) (bankruptcy schedules which bear no relationship to reality in the estimation of a judgment creditors' claim were not prepared in good faith).

The mere fact that a debtor is paying little or nothing to his or her unsecured creditors does not constitute a *per se* lack of good faith. Although this fact is relevant, the court must inquire whether the debtor has acted equitably in proposing a plan. *In re Goeb*, 675 F.2d at 1390. "A bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 Plan in an inequitable manner. Though it may consider the substantiality of the proposed repayment, the court must make its

1  good-faith determination in light of *all* militating factors." *Id.* (emphasis in

2  original).

3          The good faith requirements under subsections 1325(a)(3) (good faith plan)

4  and 1325(a)(7) (good faith bankruptcy petition) are closely related and are

5  frequently based on the same factors. As the court explained in *In re March*, 83

6  B.R. 270, 275 (Bankr. E.D. Pa. 1988):

7          [T]here is a requirement that a bankruptcy be filed in good faith which
         is separate and apart from the requirement that a chapter 13 plan be
8          proposed in good faith. *Matter of Madison Hotel Associates,* 749 F.2d
         410 (7th Cir. 1984). *See also e.g., In re Kinney,* 51 B.R. 840 (Bankr.
9          C.D. Cal. 1985) (tenth bankruptcy in just over two years was filed
         solely to prevent foreclosure by virtue of the automatic stay and was
10         not filed in good faith). In the case at bench, Savin's objections appear
         to be addressed, at least in part, at the debtor's good faith in filing
11         rather than at good faith in proposing the plan. Frequently, in the
         chapter 13 context there will be an overlap between the two good-faith
12         inquiries because the debtor's plan must be filed within a very short
         time after the case is commenced. Bankr. Rule 3015.

13

14  *Id.* (footnote omitted).

15          This court has previously ruled, in an unpublished opinion involving the

16  same objection on different facts, that a five-year chapter 13 plan, which paid only

17  the attorney with nothing to the unsecured creditors until the third year of the plan,

18  was not filed in good faith. *In re Gonzalez*, No. 08-15277, 2008 WL 5068837

19  (Bankr. E.D. Cal. Nov. 25, 2008).[5] The key distinction between this case and the

20  *Gonzalez* case was the fact that Mr. Gonzalez was not eligible for either a chapter 7

21

22

23          [5]In *Gonzalez*, the debtor's plan provided for a payment of $125 per month, for a total of
     $7,500 being paid over the stated 60 month term of the plan. Approximately 10%, or $750,
24     would have been retained by the trustee as an administrative expense. An additional $2,600
     would have been paid to the debtor's attorney at the rate of $113 per month for 23 months.
25     That left approximately $4,100 for distribution to the unsecured creditors' claims which
     totaled over $21,000. If the debtor completed the plan, he would pay less than 20% of his
26     unsecured debt and those payments would not have started until the 24th month of the plan.
     At the conclusion of the five years, the debtor would have still owed the balance of the
27     unsecured debt.

28

or a chapter 13 discharge. Looking at the totality of the circumstances, this court

found that Mr. Gonzalez was misusing the bankruptcy system because he was

simply stalling his creditors until he would be eligible for a chapter 13 discharge in a

new case. The analysis was summarized as follows:

> It does not appear from the schedules, or the Plan, that
> there is any reorganization in progress here. Indeed, *the
> relief which the Debtor needs, a discharge of his
> unsecured debts, is unavailable to the Debtor at this
> time through any chapter of the Bankruptcy Code*
> because he received a chapter 7 discharge in a case filed
> less than four years before this case. §§ 727(a)(8) and
> 1328(f)(1). Therein lies the reason why this bankruptcy
> case appears to be an abuse of the bankruptcy system.
> The Plan will stay any enforcement action by the
> creditors whose claims cannot be discharged in this
> case, yet will pay nothing to those creditors for up to
> two years (all Plan payments during that time will go to
> the Trustee and Debtor's counsel). Before the Debtor
> has to make any payments to unsecured creditors in this
> case, he will be in a position to dismiss this case and re-
> file a new chapter 13 which proposes to pay nothing to
> the unsecured creditors for another two years and sets
> the Debtor up for a discharge after the third year. The
> Debtor here is trying to effectuate an "end run" around
> the express restrictions of § 1328(f)(1).

*In re Gonzalez* at *2 (emphasis added).

Based on facts similar to the present case, this court recently overruled a

"good faith" objection by the Trustee in another unpublished opinion, *In re De Rua*,

No. 09-17529 (Bankr. E.D. Cal. Oct. 14, 2009), *available at*

http://www.caeb.uscourts.gov/pdf. The critical distinction between *De Rua* and

*Gonzalez* was the fact that Ms. De Rua was eligible for a chapter 13 discharge.[6] In

*De Rua*, the court declined to set a *per se* "bad faith" rule: that a chapter 13 plan,

---

[6]In *De Rua*, the debtor's only sources of income were $872 per month she received as the "caregiver" of a disabled child and the $870 SSI payment she received on his behalf. All of the debtor's assets were exempt, and her mortgage was current. The plan proposed to pay $40 per month, the full amount of her disposable income, to the chapter 13 trustee for 36 months, the full term required by the Bankruptcy Code. All of the plan payments would go to pay the Trustee and the debtor's attorney's fees.

1   which pays only the attorney's fees for a debtor who is then ineligible for a chapter

2   7 discharge, cannot satisfy the "good faith" confirmation test.

3        **The "Disguised Chapter 7" Dilemma.** The Trustee contends that a chapter

4   13 case which pays little or nothing to the unsecured creditors is just a "disguised

5   chapter 7" and that the Debtors are thereby abusing the restriction on chapter 7

6   discharge in subsection 727 (a)(8).  The Trustee correctly points out that (1) the

7   Debtors are not eligible for a chapter 7 discharge, (2) the Debtors were not seeking

8   to reorganize and pay their creditors when they first filed this petition under chapter

9   7, (3) the Debtors' Plan essentially pays only their attorney's fees and their car loan,

10  and (4) the Debtors are only seeking to obtain through chapter 13 what they cannot

11  obtain through chapter 7.  He argues that the combination of circumstances here

12  constitutes a lack of good faith as a matter of law.

13       In support of his Objection, the Trustee relies upon the analysis in *In re

14  Paley*, 390 B.R. 53 (Bankr. N.D.N.Y. 2008).  The facts in *Paley* are distinguishable

15  from the case at hand in one critical regard:  Neither of the plans in *Paley* proposed

16  to run for the full 36 month "applicable commitment period" prescribed for "below-

17  median-income" debtors in subsection 1325(b).[7]  The court noted in *Paley* that both

18  debtors were seeking a chapter 13 discharge as soon as they had paid the balance

19  due to their attorneys.  The trustee did not object to the amount of the payments, she

20  objected to the length of the plans, which was tied solely to the payment of

21  attorney's fees.  Had the debtors committed to make payments for the full 36 month

22  commitment period, the unsecured creditors in both cases would have realized a

23  meaningful return.  *Id.* at 56.  Based on the totality of the circumstances, the court

24  had sound reasons to deny confirmation in the *Paley* case.  The court had little

26  [7]The court in *Paley* wrote one decision to resolve two identical objections by the chapter
27  13 trustee in two virtually identical cases.  Both involved below-median-income debtors
    living on fixed incomes.  The plans proposed to only pay the debtors' disposable incomes for
28  nine months and twelve months, respectively.

8

difficulty finding that the debtors, who had *the ability but not the intent* to fund a meaningful chapter 13 plan, were not acting in good faith. The brevity of their plans indicated that they were merely disguised chapter 7's.

The court in *Paley* did not proclaim that a chapter 13 plan which pays only attorney's fees is *per se* unconfirmable. The court focused on the debtors' attempt to tie the length of the plan to the payment of attorney's fees without any regard for the debtors' "ability to pay" something to their creditors. "A plan whose duration is tied only to payment of attorney's fees simply is an abuse of the provisions, purpose, and spirit of the Bankruptcy Code." *Id.* at 59. Indeed, the *Paley* court was careful to limit the scope of its ruling to the facts before it, "[t]he court need not decide what would hypothetically satisfy good faith under § 1325(a)(3), only that these plans do not." *Id.* at 60.

Notably, the Trustee has not moved to dismiss this case based on the perceived lack of good faith.[8] He has only objected to confirmation of the Plan. Yet, the policy behind "good faith" is the same whether raised in an objection to confirmation of a chapter 13 plan or in a motion to dismiss the case. *In re Griffith*, 203 B.R. 422, 424 (Bankr. N.D. Ohio 1996), and the factors to be considered are the same, *In re Huerta*, 137 B.R. 356, 367 (Bankr. C.D. Cal. 1992). Since the Trustee has not requested dismissal of the case, the court can infer that the Trustee is not really opposed to these Debtors being in chapter 13 and receiving a chapter 13 discharge. The Trustee just objects to the contents of the Plan, specifically the minuscule distribution to unsecured creditors. But he fails to advocate what modification to the Plan, specifically what level of distribution to unsecured creditors, would satisfy the "good faith" test under these circumstances. Based on their schedules, these Debtors do not have any disposable income to distribute to the

---

[8]Bad faith in the filing of a petition is "cause" for dismissal under § 1307(c) *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999).

9

1    unsecured creditors. Yet, the Plan as now proposed offers them a 4.8% distribution.

2    Unlike the circumstances in *Paley*, the Trustee has not shown that these Debtors

3    have the *ability* to make a more substantial distribution to their unsecured creditors.

4    The term of this Plan is not tied simply to the payment of attorney's fees.

5         The Trustee is essentially asking the Debtors to bargain for their right to be in

6    chapter 13 in the first place. Obviously, the court cannot order the Debtors to pay

7    100% to their unsecured creditors as there is no basis in the Bankruptcy Code or in

8    case law for such a result. The Trustee is therefore asking this court to impose some

9    arbitrary new confirmation test, a "price tag" applicable only to chapter 13 debtors

10   who are not eligible for a chapter 7 discharge; to declare that under these

11   circumstances, the plan cannot satisfy the "good faith" test unless the debtors pay at

12   least "x" dollars or "y" percent to their unsecured creditors.

13        In the recent case *In re Molina*, 420 B.R. 825 (Bankr. D.N.M. 2009), the

14   court confirmed a chapter 13 plan under a similar set of circumstances. There, the

15   trustee argued, citing *In re Paley* and *In re Sanchez*, No. 13-09-10955, 2009 WL

16   2913224 (Bankr. D.N.M. May 19, 2009), that the debtor's plan failed the "good

17   faith" test as a matter of law solely because she was ineligible for a chapter 7

18   discharge and was paying nothing through the chapter 13 except a portion of her

19   administrative expenses. The trustee suggested, as does the Trustee here, that "good

20   faith" under those circumstances should be a legal test, not a factual one. The

21   *Molina* court declined the trustee's invitation to define a "*per se* bad faith" rule for

22   chapter 13 debtors who could not get a chapter 7 discharge.

23        The *Molina* court noted that "good faith" is not a legal test; it cannot be

24   defined to exclude certain debtors based on their eligibility, or lack thereof, for a

25   chapter 7 discharge. "Good faith" is a factual determination that must be made on a

26   case-by-case basis. "However exactly good faith is defined, it would seem to be

27   measured at least in part by the attitude and actions of the debtor." *Id.* at 830. The

28

10

1   court further noted that Congress, in BAPCPA, specifically addressed the issue of a

2   chapter 7 case followed by a chapter 13, by adding subsection 1328(f)(1) to extend

3   the time between cases which provide a discharge, and Congress did not add any

4   other requirements for confirmation. *Id*. at 830-31.

> In this case Debtor's filing is obviously outside the four-year
> "blackout" period, and Debtor is literally doing all that the statute
> requires of her. In effect the *Paley* and *Sanchez* courts have added a
> requirement that Congress did not put into the statute: that a minimal-
> payment chapter 13 plan that might well pass muster otherwise will
> not be confirmed if the debtor is not eligible for chapter 7 relief. A
> court ought to hesitate to add requirements for discharge that Congress
> did not see fit to include in the statute.

10  *Id.* at 831.

11      **Rule 3015(f) and the Burden of Proof**. Finally, since the court cannot find

12  that these Debtors fail the "good faith" test as a matter of law, the court must

13  consider the Debtors' burden to prove their good faith. As a general principal, the

14  Debtors have the burden of proof to show that each element of confirmation is

15  satisfied. However, under the authority of Rule 3015(f), the court does not have to

16  make a good faith inquiry and take evidence on the issue unless an objection is

17  filed.[9]

18      Here, in the absence of the Trustee's Objection, this Plan is arguably

19  confirmable. From the record, the Debtors appear to be doing exactly what the

20  Bankruptcy Code requires them to do. By proposing a 60-month plan with a 4.8%

21  distribution to unsecured creditors, the Debtors are offering substantially more than

---

[9]FRBP 3015(f) states:

(f) Objection to Confirmation; Determination of Good Faith in the Absence of an
Objection. An objection to confirmation of a plan shall be filed and served on the debtor, the
trustee, and any other entity designated by the court, and shall be transmitted to the United
States Trustee, before confirmation of the plan. An objection to confirmation is governed by
Rule 9014. If no objection is timely filed, the court may determine that the plan has been
proposed in good faith and not by any means forbidden by law without receiving evidence on
such issues.

1   the Bankruptcy Code requires of below-median-income debtors with a *negative*
2   *disposable income*.  The Debtors are not limiting the term of their Plan to the
3   payment of attorney's fees.  The Debtors have no nonexempt assets so they do not
4   have to pay anything to their unsecured creditors to satisfy the "chapter 7 best
5   interest" test under subsection 1325(a)(4).  The Ninth Circuit recognized long ago,
6   for a debtor with very little disposable income, that "good faith" under subsection
7   1325(a)(3) does not require a substantial repayment to unsecured creditors.  *In re*
8   *Goeb*, 675 F.2d 1386.

9       Unlike the debtors in *Paley*, the Debtors here have committed to make
10  payments to the chapter 13 trustee for 60 months–a period which exceeds the
11  "applicable commitment period" of 36 months required to satisfy subsections
12  1325(b)(1)(B) & (b)(4).  Once their Plan is confirmed, the Debtors cannot shorten
13  the term of the Plan without modifying the Plan.  If they try to modify the Plan, they
14  must again prove that the proposed modification satisfies the "good faith"
15  requirements of § 1325(a).  *Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538 (9th
16  Cir. BAP 2007).

17      Unlike the debtor in *Gonzalez*, these Debtors waited more than four years
18  after receiving their chapter 7 discharge and are therefore eligible to receive a
19  chapter 13 discharge if they complete their Plan.  § 1328(f)(1).  If the Debtors'
20  financial situation improves before completion of the Plan, then the Trustee or the
21  holder of an allowed unsecured claim may seek modification of the Plan to increase
22  the distribution to unsecured creditors.  § 1329(a)(1); see *Maney v. Kagenveama (In*
23  *re Kagenveama)*, 541 F.3d 868, 877 (9th Cir. 2008).  On the surface, the Plan does
24  not overtly offend any established principle of bankruptcy law.

25      However, the Trustee has raised a *prima facie* objection to the Debtors' good

26
27
28
                                   12

1    faith and the presumptive effect of Rule 3015(f) is no longer applicable.[10]  The

2    ultimate flaw in this case lies in the fact that the Debtors have offered no evidence

3    to support confirmation of their Plan or in response to the Trustee's objection.

4    Faced with the Objection, the court cannot simply review the schedules and find that

5    the Plan was filed in good faith.  "Where there is an objection [to good faith], more

6    than bare presentation of the plan and provision for payment thereunder is

7    requisite."  *In re Warren*, 89 B.R. at 91 (interpreting former Rule 3020(b)(2) prior to

8    the 1993 amendment of Rule 3015 and the addition of subdivision (f)).  The court

9    must inquire whether the Debtors "acted inequitably in proposing their chapter 13

10    plan."  *In re Goeb*, 675 F.2d at 1390.  That determination cannot be made without

11    evidence.  The court can only consider the "totality of the circumstances" if it has

12    evidence of what those circumstances are.

13            This leads to the question, what showing should the Debtors make?  Prior to

14    the enactment of BAPCPA, chapter 13 included the "super discharge" whereby

15    debtors could complete their chapter 13 plan and discharge certain debts that would

16    not otherwise be dischargeable in chapter 7 pursuant to § 523.  In *Fidelity &*

17    *Casualty Company of New York v. Warren (In re Warren)*, B.R. 87 (9th Cir. BAP

18    1988), the Ninth Circuit Bankruptcy Appellate Panel noted that the burden to

19    establish good faith is "especially heavy" when a super discharge is sought.  *In re*

20    *Warren*, 87 B.R. at 93.  In this context, the *Warren* court concluded:

21                    Logic requires there be an articulated standard distinguishing
                    entitlement to dischargeability under Chapter 13 vis-a-vis
22                    Chapter 7.  To put it otherwise, there must be criteria which
                    preclude by-pass of non-dischargeability under Chapter 7
23                    simply by detouring or converting to Chapter 13.  Where there
                    is an absence of any significant factual element distinguishing
24                    the circumstances of a Chapter 13 petition with a substantial

25    _____

26    [10]The court is not suggesting here that the presumptive effect of Rule 3015(f) is
    inapplicable every time an objection is filed with a boiler plate allegation of "bad faith."  The
27    objection must be properly pled.  Here, the Trustee articulated specific factors in support of
    his Objection.  The Trustee has pled a *prima facie* case for denial of confirmation.
28

nondischargeable debt from those attendant to a Chapter 7
petition, the debtor should not be permitted to nullify major
provisions of 11 U.S.C. § 523 merely by paying insignificant
portion of the nondischargeable debt. Congress in Chapter 7
does not allow "best effort" to discharge certain debts. Neither
should best effort alone discharge them in Chapter 13. Good
faith requires more.

*Id.* at 95.

Here, the Debtors are arguably seeking the post-BAPCPA equivalent of the

old "super discharge," *i.e.*, a discharge of unsecured debts that cannot be discharged

in chapter 7. However, given the fact that the "super discharge" was abolished in

BAPCPA, and Congress has now fixed time limits on the right to receive a

discharge in successive cases, it is not clear that there is still a compelling need to

"distinguish the Debtors' entitlement" to a discharge under chapter 13 vis-a-vis

chapter 7. When a *prima facie* objection is raised, the Debtors still have the burden

of proof to establish their "good faith." This requires the Debtors to produce some

evidence in support of confirmation to address the "good faith" issue. The Debtors

here have already received a "fresh start" in chapter 7. At a minimum, they should

explain the circumstances that compel them to seek another discharge of virtually all

of their obligations at a time when they are not yet eligible for another chapter 7

discharge. If the evidence initially offered in support of confirmation is

unpersuasive, or objectionable, the court can set the matter for an evidentiary

hearing.

**Conclusion.**

The Trustee argues that the chapter 13 petition and the Plan were not filed in

good faith based on the "totality of the circumstances." However, the only

circumstances he asks the court to consider are the insignificant distribution to

unsecured creditors coupled with the fact that the Debtors are not eligible for a

chapter 7 discharge. But for the "good faith" question, there appears to be no other

reason to deny confirmation of this Plan under § 1325. The Trustee is essentially

14

1  asking the court to rule that these circumstances fail the good-faith test as a matter
2  of law.  Alternatively, the Trustee is asking the court to impose a "good faith price
3  tag" for chapter 13 debtors who may not be eligible for a chapter 7 discharge.  The
4  court declines the Trustee's invitation to do so.  While the Debtors' prior bankruptcy
5  history is certainly relevant, the court must consider all of the "circumstances," not
6  just a select few.  Congress already addressed the "timing" issue when it modified
7  § 1328 to impose the time limits for getting a 13 discharge in successive cases.  The
8  Debtors are in compliance with subsection 1328(f)(1).  There is no authority in the
9  Bankruptcy Code for adding an additional financial burden to chapter 13 debtors
10  just because they are not eligible for a chapter 7 discharge.

11      That having been said, the Trustee's Objection does raise questions which the
12  Debtors have the burden to answer.  The Objection shifts to the Debtors the burden
13  of producing evidence to show that they are acting in good faith.  The court cannot
14  consider the "totality of the circumstances" if the Debtors fail to produce any
15  evidence to explain their circumstances.  At a minimum, the Debtors should explain
16  the reasons why they are already in need of another "fresh start," which they cannot
17  get in chapter 7.

18      Based on the foregoing, the Debtors have failed to sustain their burden to
19  persuade the court that the chapter 13 petition and the chapter 13 Plan were filed in
20  good faith.  Accordingly, the Trustee's Objection to confirmation of the Plan
21  pursuant to subsections 1325(a)(3) & (7) will be sustained.  Confirmation of the
22  Plan will be denied.

23      Dated: March ___23___, 2010

24

25                                      W. Richard Lee
                                        United States Bankruptcy Judge
26

27

28

                                        15