POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re

Daniel Lavilla and
Molly Lavilla,

      Debtors.

Case No. 09-18840-B-13

DC No. TOG-2

**MEMORANDUM DECISION REGARDING MOTION
TO CONFIRM FIRST MODIFIED CHAPTER 13 PLAN**

This disposition is not appropriate for publication. Although it may cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Benjamin C. Shein, Esq., appeared for the chapter 13 trustee.

Thomas O. Gillis, Esq., appeared on behalf of the debtors, Daniel and Molly Lavilla.

      Before the court is a motion by the debtors, Daniel and Molly Lavilla (the "Debtors") to confirm a modified chapter 13 plan (the "Plan") over the objection of the chapter 13 trustee, Michael H. Meyer, Esq. (the "Trustee"). This case was originally filed as a chapter 7, however, the Debtors had already received a chapter 7 discharge in 2005. After realizing that they were not eligible for another chapter 7 discharge, the Debtors converted this case to chapter 13. The Trustee contends that neither the Plan, nor their conversion from chapter 7 to chapter 13, satisfies the "good faith" requirement of 11 U.S.C. subsections 1325(a)(3) & (7) (the

"Objection").[1] The Plan appears to satisfy the elements for confirmation in all respects except the Trustee's challenge to the Debtors' good faith. This court previously denied confirmation of a prior plan in this case because the Debtors had failed to offer any evidence upon which the court could make a "good faith" finding. *In re Lavilla*, 425 B.R. 572 (Bankr. E.D. Cal. 2010) ("*Lavilla I*"). The Debtors filed the current Plan and again moved for confirmation. The court conducted an evidentiary hearing and the Debtors have now offered the testimony of Daniel Lavilla in support of confirmation.[2] For the reasons set forth below, the Trustee's Objection will be overruled. The Plan will be confirmed.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has jurisdiction over this matter under 28 U.S.C. § 1334, 11 U.S.C. § 1325[3] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A) & (L).

**Background and Findings of Fact.**

The following facts were compiled from the Debtor's testimony at the evidentiary hearing and from the court's review of the records in this case and the

---

[1] The Trustee also objected on the basis of feasibility, that the Debtors cannot afford to make the proposed plan payments. In response to the objection, the Debtors filed an amended schedule J which shows, coincidently, that the Debtors now have exactly enough monthly net income to fund the proposed Plan. At the hearing, the Trustee's counsel represented that the feasibility objection has been resolved.

[2] At the conclusion of Mr. Lavilla's testimony, the Trustee's counsel declined to cross-examine Mr. Lavilla and declined to present any witnesses or evidence in rebuttal.

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

2

Debtors' prior chapter 7 case. Before September 11, 2001, both of the Debtors were employed in good jobs with United Airlines. Mr. Lavilla had been employed for 15 years and together the Debtors enjoyed an annual income of approximately $100,000. In the economic slowdown that followed 9/11, Mr. Lavilla was initially furloughed and ultimately laid off. Mrs. Lavilla's job position was eliminated as well. The Debtors then had two small children. They tried to find suitable new employment and tried to negotiate with their creditors. They ultimately lost their home and for the next year lived with Mr. Lavilla's parents. Mr. Lavilla worked part time for UPS while he continued to search for regular employment.

In 2004, Mrs. Lavilla was diagnosed with a serious health issue which required surgery and left her unable to work for six to eight months. The Debtors resorted to credit cards as a source of funds for living expenses. Faced with mounting medical bills and credit card obligations, the Debtors filed a petition for relief under chapter 7 in the Northern District of California in February 2005 (case number 05-10251) (the "Prior Case"). In May 2005, they received a discharge in the Prior Case.

Since 2007, Mr. Lavilla has been employed as a district manager by the Department of Homeland Security and receives a monthly income of approximately $3,629. In 2008, Mrs. Lavilla experienced more health related issues, underwent a second major surgery, and was unable to work for approximately six more months. Once again, the Debtors found themselves facing significant medical bills and credit card obligations which they could not pay.

In September 2009, four years and seven months after filing the Prior Case, they again needed relief from their creditors and filed this petition under chapter 7. With their chapter 7 petition, the Debtors filed a statement of intention to reaffirm the debt for their automobile. Because of the Prior Case, the Debtors will not be eligible for another discharge in chapter 7 until February 2013. However, they are eligible to receive a discharge in chapter 13 if they are able to confirm and complete

their Plan.[4] When Debtors' counsel realized that the Debtors were not eligible for a chapter 7 discharge, he filed a motion to convert this case to chapter 13. That motion was unopposed and was granted without a hearing.

The Debtors are below-median-income debtors within the meaning of subsection 1325(b)(3) so their "disposable income" is determined from schedules I and J. It appears from the schedules that the Debtors are the working parents of two elementary-school-age children. Their only source of income is from their employment. Mr. Lavilla earns a gross income of $3,629 per month as a Homeland Security officer and Mrs. Lavilla earns a gross income of $1,037 per month as a part-time assistant librarian for the local school district. Together, their net take-home pay is reported on schedule I to be $3,420 per month. Their household expenses, not including an automobile payment of $392, are reported on amended schedule J to be $3,003 leaving a monthly net income of $417.

The Debtors' schedules show that they own no real property and rent their residence for $1,100 per month. The Debtors' personal property, including two modest automobiles, is stated to be worth $16,500 and all of their assets are either encumbered or exempt. Their scheduled unsecured debts total $18,524, which includes debts for medical services, credit cards, "payday" loans and various claims assigned to collection agencies. The Debtors have no priority debts. Five unsecured claims have been filed to date totaling $11,068. The only secured debt scheduled in the amount of $16,732 is for one of their automobiles, a 2006 Ford Escape, which they value at $10,000.

The proposed Plan provides that the Debtors will make monthly payments to

---

[4] 11 U.S.C. § 727(a)(8) provides that a debtor cannot receive a discharge in chapter 7 if the debtor has already received a chapter 7 discharge in a case filed within the prior eight years. 11 U.S.C. § 1328(f)(1) provides that a debtor cannot receive a discharge in chapter 13 if the debtor has received a discharge in a case filed under chapter 7 within the prior four years. This case was filed more than four years after the prior chapter 7. Prior to BAPCPA, there was no restriction on a debtor's ability to file a chapter 13 petition and get a discharge after a prior case.

the Trustee in the amount of $417 for a term of 60 months. The Plan payments will be applied to pay the Trustee's compensation, the secured automobile claim, and the Debtors' attorney's fees, in the amount of $2,100, which will be paid at the rate of $50 per month.[5] The automobile claim will be paid in full at the rate of $324.30 per month with 5.0% interest.[6] The Plan provides for a 4.86% distribution to the unsecured creditors in class 7, a total distribution to creditors of approximately $900 (the actual distribution based on the few claims filed will be approximately 8.1%). Until the attorney's fees are paid, there will be very little money for distribution to the unsecured creditors. The actual payment of unsecured claims will not begin until the 43rd month of the Plan.

**Issues Presented.**

The Debtors cannot receive a chapter 7 discharge and are now proposing to make a small, but not insignificant, distribution to their unsecured creditors in exchange for a chapter 13 discharge. The Debtors originally sought relief under chapter 7 and proposed to reaffirm the debt for their automobile. The Debtors only converted this case to chapter 13 when it was discovered that they are not yet eligible for another chapter 7 discharge. Based on that combination of circumstances, the Trustee contends that both the conversion from chapter 7 and the chapter 13 Plan fail to satisfy the "good faith" test. The Trustee argues that this chapter 13 case is just a disguised chapter 7 which constitutes an abuse of the Bankruptcy Code. The only question presented to the court is: On the evidence

---

[5] Based on the Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys statement filed after conversion of this case to chapter 13, the Debtors have paid their attorney $1,400. The no-look fee for individual chapter 13 cases in the Eastern District of California is $3,500. The balance of $2,100 must be paid to Debtors' attorney through the Plan.

[6] The debt is listed in schedule D in the amount of $16,060. The creditor filed a proof of claim in the amount of $16,732.49. The automobile was purchased within 910 days of the bankruptcy petition and so cannot be valued under § 506.

5

presented, have the Debtors established that they are acting in good faith within the meaning of subsections 1325(a)(3) and (7)?

**Analysis and Conclusions of Law.**

**The "Good Faith" Test.** Pursuant to subsection 1325(a)(3), a debtor cannot confirm a chapter 13 plan which is not filed in good faith. In addition, a debtor cannot confirm a plan unless the bankruptcy petition is filed in good faith § 1325(a)(7). When a debtor files a chapter 13 petition, or seeks to convert from chapter 7 to chapter 13, "good faith" is essentially an element of a debtor's qualification to be in chapter 13. *See Marrama v. Citizens Bank of Massachusetts (In re Marrama)*, 549 U.S. 365, 373 (2007). The debtor has the burden to prove each element of confirmation by a preponderance of the evidence. *U.S. v. Arnold and Baker Farms (In re Arnold and Baker Farms)*, 177 B.R. 648, 654 (9th Cir. BAP 1994) (judg't aff'd 85 F3d 1415 (9th C.A. 1996), *cert. denied* 519 U.S. 1054 (1997).) However, under the authority of Rule 3015(f), the court does not have to make a good faith inquiry and take evidence on the issue unless a *prima facie* objection is filed. *See Lavilla I*, 425 B.R. at 580.

The Bankruptcy Code does not define "good faith." The court must consider the totality of the circumstances when making the "good faith" determination. *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1391 (9th Cir. 1982) (a chapter 13 plan which only pays 1% to unsecured creditors is confirmable if otherwise filed in good faith). The court can determine that a chapter 13 petition is not filed in "good faith" without having to find that the debtor is acting in "bad faith" (dishonesty of belief or purpose). *Guastella v. Hampton (In re Guastella)*, 341 B.R. 908, 920 (9th Cir. BAP 2006) (bankruptcy schedules which bear no relationship to reality in the estimation of a judgment creditors' claim were not prepared in good faith).

The mere fact that a debtor is paying little or nothing to his or her unsecured creditors does not constitute a *per se* lack of good faith. Although this fact is

6

relevant, the court must inquire whether the debtor has acted equitably in proposing a plan. *In re Goeb*, 675 F.2d at 1390. "A bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 Plan in an inequitable manner. Though it may consider the substantiality of the proposed repayment, the court must make its good-faith determination in light of *all* militating factors." *Id.* (emphasis in original).

The good faith requirements under subsections 1325(a)(3) (good faith plan) and 1325(a)(7) (good faith bankruptcy petition) are closely related and are frequently based on the same factors. As the court explained in *In re March*, 83 B.R. 270, 275 (Bankr. E.D. Pa. 1988):

> [T]here is a requirement that a bankruptcy be filed in good faith which is separate and apart from the requirement that a chapter 13 plan be proposed in good faith. *Matter of Madison Hotel Associates*, 749 F.2d 410 (7th Cir. 1984). *See also e.g., In re Kinney*, 51 B.R. 840 (Bankr. C.D. Cal. 1985) (tenth bankruptcy in just over two years was filed solely to prevent foreclosure by virtue of the automatic stay and was not filed in good faith). In the case at bench, Savin's objections appear to be addressed, at least in part, at the debtor's good faith in filing rather than at good faith in proposing the plan. Frequently, in the chapter 13 context there will be an overlap between the two good-faith inquiries because the debtor's plan must be filed within a very short time after the case is commenced. Bankr. Rule 3015.

*Id.* (footnote omitted).

This court has previously ruled, in an unpublished opinion involving essentially the same objection on different facts, that a five-year chapter 13 plan, which paid only the attorney with nothing to the unsecured creditors until the third year of the plan, was not filed in good faith. *In re Gonzalez*, No. 08-15277, 2008 WL 5068837 (Bankr. E.D. Cal. Nov. 25, 2008).[7] The key distinction between this

---

[7]In *Gonzalez*, the debtor's plan provided for a payment of $125 per month, for a total of $7,500 being paid over the stated 60 month term of the plan. Approximately 10%, or $750, would have been retained by the trustee as an administrative expense. An additional $2,600

case and the *Gonzalez* case was the fact that Mr. Gonzalez was not eligible for either a chapter 7 or a chapter 13 discharge. Looking at the totality of the circumstances, this court found that Mr. Gonzalez was misusing the bankruptcy system because he was simply stalling his creditors until he would be eligible for a chapter 13 discharge in a new case. The analysis was summarized as follows:

> It does not appear from the schedules, or the Plan, that there is any reorganization in progress here. Indeed, *the relief which the Debtor needs, a discharge of his unsecured debts, is unavailable to the Debtor at this time through any chapter of the Bankruptcy Code* because he received a chapter 7 discharge in a case filed less than four years before this case. §§ 727(a)(8) and 1328(f)(1). Therein lies the reason why this bankruptcy case appears to be an abuse of the bankruptcy system. The Plan will stay any enforcement action by the creditors whose claims cannot be discharged in this case, yet will pay nothing to those creditors for up to two years (all Plan payments during that time will go to the Trustee and Debtor's counsel). Before the Debtor has to make any payments to unsecured creditors in this case, he will be in a position to dismiss this case and re-file a new chapter 13 which proposes to pay nothing to the unsecured creditors for another two years and sets the Debtor up for a discharge after the third year. The Debtor here is trying to effectuate an "end run" around the express restrictions of § 1328(f)(1).

*In re Gonzalez* at *2 (emphasis added).

Based on facts similar to the present case, this court recently overruled a "good faith" objection by the Trustee in another unpublished opinion, *In re De Rua*, No. 09-17529 (Bankr. E.D. Cal. Oct. 14, 2009), *available at* http://www.caeb.uscourts.gov/pdf. The critical distinction between *De Rua* and

---

would have been paid to the debtor's attorney at the rate of $113 per month for 23 months. That left approximately $4,100 for distribution to the unsecured creditors' claims which totaled over $21,000. If the debtor completed the plan, he would pay less than 20% of his unsecured debt and those payments would not have started until the 24th month of the plan. At the conclusion of the five years, the debtor would have still owed the balance of the unsecured debt.

8

*Gonzalez* was the fact that Ms. De Rua was eligible for a chapter 13 discharge.[8] In *De Rua*, the court declined to set a *per se* "bad faith" rule: that a chapter 13 plan, which pays only the attorney's fees for a debtor who is then ineligible for a chapter 7 discharge, cannot satisfy the "good faith" confirmation test.

**The "Disguised Chapter 7" Dilemma.** The Trustee contends that a chapter 13 case in which the Debtors are not eligible for a chapter 7 discharge, and which pays little or nothing to the unsecured creditors, is just a "disguised chapter 7" and an abuse of the Bankruptcy Code, specifically the temporal restriction on chapter 7 discharge in subsection 727(a)(8). The Trustee correctly points out that (1) the Debtors are not eligible for a chapter 7 discharge, (2) the Debtors were not seeking to reorganize and pay their creditors when they first filed this petition under chapter 7, and (3) the Debtors' Plan essentially pays only their attorney's fees and their car loan for the first three and one-half years. He argues that the combination of circumstances here constitutes a lack of good faith.

In support of his Objection, the Trustee relies upon the analysis in *In re Paley*, 390 B.R. 53 (Bankr. N.D.N.Y. 2008). The facts in *Paley* are distinguishable from the case at hand in one critical regard: Neither of the plans in *Paley* proposed to run for the full 36 month "applicable commitment period" prescribed for "below-median-income" debtors in subsection 1325(b).[9] The court noted in *Paley* that both

---

[8] In *De Rua*, the debtor's only sources of income were $872 per month she received as the "caregiver" of a disabled child and the $870 SSI payment she received on his behalf. All of the debtor's assets were exempt, and her mortgage was current. The plan proposed to pay $40 per month, the full amount of her disposable income, to the chapter 13 trustee for 36 months, the full term required by the Bankruptcy Code. All of the plan payments would go to pay the Trustee and the debtor's attorney's fees.

[9] The court in *Paley* wrote one decision to resolve two identical objections by the chapter 13 trustee in two virtually identical cases. Both involved below-median-income debtors living on fixed incomes. The plans proposed to only pay the debtors' disposable incomes for nine months and twelve months, respectively.

9

debtors were seeking a chapter 13 discharge as soon as they had paid the balance due to their attorneys. The trustee did not object to the amount of the payments, she objected to the length of the plans, which was tied solely to the payment of attorney's fees. Had the debtors committed to make payments for the full 36 month commitment period, the unsecured creditors in both cases would have realized a meaningful return. *Id.* at 56. Based on the totality of the circumstances, the court had sound reasons to deny confirmation in the *Paley* case. The court had little difficulty finding that the debtors, who had *the ability but not the intent* to fund a meaningful chapter 13 plan, were not acting in good faith. The brevity of their plans indicated that they were merely disguised chapter 7's.

The court in *Paley* did not proclaim that a chapter 13 plan which pays only attorney's fees is *per se* unconfirmable. The court focused on the debtors' attempt to tie the length of the plan to the payment of attorney's fees without any regard for the debtors' "ability to pay" something to their creditors. "A plan whose duration is tied only to payment of attorney's fees simply is an abuse of the provisions, purpose, and spirit of the Bankruptcy Code." *Id.* at 59. Indeed, the *Paley* court was careful to limit the scope of its ruling to the facts before it, "[t]he court need not decide what would hypothetically satisfy good faith under § 1325(a)(3), only that these plans do not." *Id.* at 60.

In the recent case *In re Molina*, 420 B.R. 825 (Bankr. D.N.M. 2009), the court confirmed a chapter 13 plan under a set of circumstances similar to this case. There, the trustee argued, citing *In re Paley* and *In re Sanchez*, No. 13-09-10955, 2009 WL 2913224 (Bankr. D.N.M. May 19, 2009), that the debtor's plan failed the "good faith" test as a matter of law solely because she was ineligible for a chapter 7 discharge and was paying nothing through the chapter 13 except a portion of her administrative expenses. The trustee suggested that "good faith" under those circumstances should be a legal test, not a factual one. The *Molina* court declined

the trustee's invitation to define a "*per se* bad faith" rule for chapter 13 debtors who could not get a chapter 7 discharge.

The *Molina* court noted that "good faith" is not a legal test; it cannot be defined to exclude certain debtors based on their eligibility, or lack thereof, for a chapter 7 discharge. "Good faith" is a factual determination that must be made on a case-by-case basis. "However exactly good faith is defined, it would seem to be measured at least in part by the attitude and actions of the debtor." *Id.* at 830. The court further noted that Congress, in BAPCPA, specifically addressed the issue of a chapter 7 case followed by a chapter 13, by adding subsection 1328(f)(1) to extend the time between cases which provide a discharge, and Congress did not add any other requirements for confirmation. *Id.* at 830-31.

> In this case Debtor's filing is obviously outside the four-year "blackout" period, and Debtor is literally doing all that the statute requires of her. In effect the *Paley* and *Sanchez* courts have added a requirement that Congress did not put into the statute: that a minimal-payment chapter 13 plan that might well pass muster otherwise will not be confirmed if the debtor is not eligible for chapter 7 relief. A court ought to hesitate to add requirements for discharge that Congress did not see fit to include in the statute.

*Id.* at 831.

Notably, the Trustee has not moved to dismiss this case based on the perceived lack of good faith.[10] He has only objected to confirmation of the Plan. Yet, the policy behind "good faith" is the same whether raised in an objection to confirmation of a chapter 13 plan or in a motion to dismiss the case. *In re Griffith*, 203 B.R. 422, 424 (Bankr. N.D. Ohio 1996), and the factors to be considered are essentially the same, *In re Huerta*, 137 B.R. 356, 367 (Bankr. C.D. Cal. 1992). Since the Trustee has not requested dismissal of the case, the court can infer that the Trustee is not really opposed to these Debtors being in chapter 13 and receiving a

---

[10]Bad faith in the filing of a petition is "cause" for dismissal under § 1307(c) *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999).

11

chapter 13 discharge. The Trustee just objects to the contents of the Plan, specifically the amount and the timing of the distribution to unsecured creditors. Yet, the Trustee declines to advocate what modification to the Plan, specifically what level of distribution to unsecured creditors, would satisfy the "good faith" test under these circumstances. The Trustee is essentially asking the Debtors to bargain for their right to remain in chapter 13. Obviously, the court cannot order the Debtors to pay 100% to their unsecured creditors as there is no basis in the Bankruptcy Code or in case law for such a result. Based on their schedules, these Debtors do not have any disposable income to distribute to the unsecured creditors. Yet, the Plan as now proposed offers an 8% distribution to the creditors who timely filed unsecured claims. Unlike the circumstances in *Paley*, the Trustee has not shown that these Debtors have the *ability* to make a more substantial distribution to their unsecured creditors. The term of this Plan is not tied simply to the payment of attorney's fees.

Nevertheless, the Trustee has raised a *prima facie* objection to the Debtors' good faith which shifts to the Debtors the affirmative burden to produce evidence to show their good faith. Faced with the Objection, the court cannot simply review the schedules and find that the Plan was filed in good faith. "Where there is an objection [to good faith], more than bare presentation of the plan and provision for payment thereunder is requisite." In *Fidelity & Casualty Company of New York v. Warren (In re Warren)*, 89 B.R. 91 (9th Cir. BAP 1988) (interpreting former Rule 3020(b)(2) prior to the 1993 amendment of Rule 3015 and the addition of subdivision (f)). The court must inquire whether the Debtors "acted inequitably in proposing their chapter 13 plan." *In re Goeb*, 675 F.2d at 1390. That determination cannot be made without evidence. The court can only consider the "totality of the circumstances" if it has evidence of what those circumstances are. In *Lavilla I*, this court ruled that the Debtors "should explain the reasons why they are already in

12

need of another 'fresh start' which they cannot get in chapter 7." 425 B.R. at 582.

This leads to the question, what showing of good faith must the Debtors make? Prior to the enactment of BAPCPA, chapter 13 included the "super discharge" whereby debtors could complete their chapter 13 plan and discharge certain debts that would not otherwise be dischargeable in chapter 7 pursuant to § 523. In *In re Warren*, 89 B.R. at 87, the Ninth Circuit Bankruptcy Appellate Panel noted that the burden to establish good faith is "especially heavy" when a super discharge is sought. *In re Warren*, 89 B.R. at 93. In this context, the *Warren* court concluded:

> Logic requires there be an articulated standard *distinguishing entitlement to dischargeability* under Chapter 13 vis-a-vis Chapter 7. To put it otherwise, there must be criteria which preclude by-pass of non-dischargeability under Chapter 7 simply by detouring or converting to Chapter 13. Where there is an absence of any significant factual element distinguishing the circumstances of a Chapter 13 petition with a substantial nondischargeable debt from those attendant to a Chapter 7 petition, the debtor should not be permitted to nullify major provisions of 11 U.S.C. § 523 merely by paying insignificant portion of the nondischargeable debt. Congress in Chapter 7 does not allow "best effort" to discharge certain debts. Neither should best effort alone discharge them in Chapter 13. Good faith requires more.

*Id.* at 95 (emphasis added).

Here, the Debtors are arguably seeking the post-BAPCPA equivalent of the old "super discharge," *i.e.*, a discharge of unsecured debts that cannot be discharged in chapter 7. However, given the fact that the "super discharge" was abolished in BAPCPA, and Congress has now fixed time limits on the right to receive a discharge in successive cases, this court can no longer find a compelling need to "distinguish the Debtors' entitlement" to a discharge under chapter 13 vis-a-vis chapter 7. Specifically, this court rejects any notion that the Debtors' burden here should be "especially heavy."

/ / /

13

**Application of the Facts to the Good Faith Test.**

Based on the court's review of the record, consideration of the Debtor's testimony, and the absence of any rebuttal by the Trustee, the court is persuaded that the "good faith" test has been satisfied in this case. While the Debtors' prior bankruptcy history is certainly relevant, the court must consider all of the "militating circumstances," not just a select few. The Trustee gives great weight to the fact that the Debtors are only in chapter 13 because they are not yet eligible for a discharge in chapter 7. However, Congress specifically addressed the chapter 7 versus 13 "timing" issue when it modified § 1328 to impose the temporal limits for getting a 13 discharge in successive cases. The Debtors are in compliance with subsection 1328(f)(1). There is no authority in the Bankruptcy Code for adding an additional financial burden to chapter 13 debtors just because they are not eligible for a chapter 7 discharge. The Trustee offers no other evidence or reasons to suggest that the Debtors have "misrepresented facts in the Plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed the chapter 13 Plan in an inequitable manner." *In re Goeb*, 675 F.2d at 1390.

The central purpose of the Bankruptcy Code is to "provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future efforts, unhampered by the pressure and discouragement of preexisting debt.' " *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (internal quotations omitted.) However, this relief is only available to the "honest but unfortunate debtor." *Id.* at 287, 111 S.Ct. 654. The Debtors here appear to fall squarely within the definition of "honest but unfortunate." Once the beneficiaries of steady employment with a comfortable middle class lifestyle, they have experienced a series of economic and health related difficulties, none of which appears to be their fault. They have diligently sought employment to get their feet back on the

ground and did not seek bankruptcy relief lightly, in either the Prior Case or this case. The Debtors appear to have paid their taxes and maintained a conservative lifestyle since filing the Prior Case. Indeed, the total amount of unsecured debt scheduled in this case ($18,524) is quite modest compared to the enormous debt burden scheduled in many of the chapter 13 cases that pass through this court unscathed by objections from the Trustee. Similarly, the 8.1% distribution which the Debtors are offering to the creditors who filed unsecured claims is more than the distribution proposed in many of the chapter 13 plans that routinely get confirmed in this court.

In spirit and in form, the Debtors have gone beyond what the Bankruptcy Code requires of below-median-income-debtors. By proposing a 60-month plan with a 4.86% distribution to scheduled unsecured creditors (8.1% to actually filed claims), the Debtors are offering substantially more than the Bankruptcy Code requires for confirmation of the Plan. The Debtors have no nonexempt assets so they do not have to pay anything to their unsecured creditors to satisfy the "chapter 7 best interest" test under subsection 1325(a)(4). There is no evidence to suggest that they have the "ability to pay" more than they are proposing in the Plan. The Ninth Circuit recognized long ago, for a debtor with very little disposable income, that "good faith" under subsection 1325(a)(3) does not require a substantial repayment to unsecured creditors. *In re Goeb*, 675 F.2d 1386.

Unlike the circumstances in *Paley*, the Debtors are not limiting the term of their Plan to the payment of attorney's fees. The Debtors here have committed to make payments to the Trustee for 60 months–a period which exceeds the "applicable commitment period" of 36 months required to satisfy subsections 1325(b)(1)(B) & (b)(4). Once their Plan is confirmed, the Debtors cannot reduce the payments or shorten the term of the Plan without modifying the Plan. If they try to modify the Plan, they must again prove that the proposed modification satisfies

the "good faith" requirements of § 1325(a). *Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538 (9th Cir. BAP 2007). Conversely, if the Debtors' financial situation improves before completion of the Plan, then the Trustee or the holder of an allowed unsecured claim may seek modification of the Plan to increase the distribution to unsecured creditors. § 1329(a)(1); *see Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 877 (9th Cir. 2008).

       The Trustee argues that the Debtors did not initially intend to pay anything to their creditors when they filed the chapter 7 petition. However, that does not establish an intent to unfairly manipulate the Bankruptcy Code. The record suggests that they sought relief under chapter 7 as a result of mistake and a misunderstanding of the law. The Trustee also argues that the Debtors can dismiss this case after February 2013, and refile under chapter 7 to avoid paying anything to their unsecured creditors.[11] However, Mr. Lavilla testified that they can afford to make their Plan payments and they do intend to complete their Plan. The Debtors are statutorily eligible for a chapter 13 discharge if they successfully complete their Plan and this court cannot automatically assume that the Debtors will not try in good faith to do so. Unlike the debtor in *Gonzalez*, these Debtors waited more than four years after receiving their chapter 7 discharge and are therefore eligible to receive a chapter 13 discharge if they complete their Plan and otherwise comply with § 1328. If the Debtors dismiss this case and try to replace it with a new chapter 7 at a later date, the "good faith" argument can certainly be made at that time. On the surface, this Plan does not overtly offend any established principle of bankruptcy law.

///

///

---

[11]According to the Trustee's analysis, the unsecured creditors will receive a monthly distribution of $3.41. When the Debtors are again eligible for a chapter 7 discharge, after 26 months, the unsecured creditors will have only received $88.66.

16

**Conclusion.**

Based on the foregoing the court is persuaded, by the totality of the circumstances, that the Debtors' conversion from chapter 7 to chapter 13 and their chapter 13 Plan were filed in good faith. Accordingly, the Trustee's Objection to confirmation of the Plan pursuant to subsections 1325(a)(3) & (7) will be overruled. The Debtors' motion to confirm their modified Plan will be granted. The Debtors shall submit a proposed order consistent with this ruling.

Dated: May 20, 2010

W. Richard Lee
United States Bankruptcy Judge